IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ _____

MICHELIN NORTH AMERICA, INC.                    )
One Parkway South                               )
Greenville, South Carolina 19001,               )
                                                )
                                    Plaintiff   )
                                                )
V.                                              )
                                                )
UNITED STATES DEPARTMENT OF DEFENSE             )
1000 Defense Pentagon                           )
Washington, D.C. 20301-1000                     )
                                                )
                                                )
DEFENSE LOGISTICS AGENCY                        )
8725 John J. Kingman Road                       )
Fort Belvoir, Virginia 22060-6221              )
                                                )
                                                )
DR. ROBERT M. GATES                             )
1000 Defense Pentagon                           )
Washington, D.C. 20301-1000                     )
                                                )
                                                )
M. SUSAN CHADICK                                )
8725 John J. Kingman Road                       )
Fort Belvoir, Virginia 22060-6221,             )
                                                )
                                    Defendants  )
_____)

## COMPLAINT

Plaintiff Michelin North America, Inc. ("Michelin") brings this action for injunctive

and declaratory relief enjoining Defendants United States Department of Defense ("DOD"),

Defense Logistics Agency ("DLA"), Dr. Robert M. Gates, Secretary of Defense ("Gates"),

and M. Susan Chadick, Deputy General Counsel of DLA ("Chadick") from releasing, disclosing or disseminating to Michelin's competitor certain pricing information provided by Michelin in response to DLA Bid Solicitation SP0700-06-R-7023, or in connection with Contract No. SPM7L10-7-D-7001, awarded to Michelin on December 26, 2006 ("Contract"). Absent injunctive relief, Michelin will suffer substantial and irreparable competitive harm as a result of Defendants' decision to release Michelin's confidential and proprietary pricing information to a major competitor of Michelin on or about February 20, 2008. Although Defendants' previously had determined that Michelin's pricing information was exempt from disclosure and would not be released, they refused to afford Michelin an opportunity to object after Defendants reversed their position without notice to Michelin.

## *Parties*

1.      Plaintiff Michelin is a corporation organized under the laws of the State of New York and having its principal place of business in Greenville, South Carolina.  Michelin designs, manufactures and sells tires for every type of vehicle, including airplanes, automobiles, bicycles, earthmovers, farm equipment, heavy-duty trucks, motorcycles and the space shuttle.  Through its Aircraft Tire Division, Michelin designs, manufactures and distributes tires for use on military and commercial aircraft.

2.      Defendant DOD is a department of the Executive Branch of the United States Government, headquartered in Washington, D.C.  Through its sub-agency, DLA, DOD has custody and control over the pricing information that is the subject matter of this action.

3.      Defendant DLA is a sub-agency of DOD with its headquarters at Fort Belvoir, Virginia.  DLA is overseen and controlled by DOD.

4.    Defendant Gates is the Secretary of Defense and is joined as a defendant in this action in his official capacity.

5.    Defendant Chadick is the Deputy General Counsel of DLA and is joined as a defendant in this action in her official capacity.  She issued the determination to release the pricing information that is the subject of this action.

### *Jurisdiction And Venue*

6.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 because it arises under the laws of the United States, including the Administrative Procedure Act, 5 U.S.C. §701, et. seq., the Trade Secrets Act, 18 U.S.C. §1905, and the Freedom of Information Act, 5 U.S.C. §552.  This Court also has jurisdiction to issue declaratory judgments pursuant to 28 U.S.C. §§2201-2202.  Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (e).

### *Factual Allegations*

7.    Michelin is a leading supplier of tires for use on military and commercial aircraft in the United States and throughout the world.

8.    Goodyear Tire and Rubber Company ("Goodyear") is a major competitor of Michelin in the market for supplying tires for use on commercial and military aircraft. Michelin and Goodyear compete vigorously to supply aircraft tires to the United States military, foreign military purchasers, and U.S. and foreign commercial airlines and plane manufacturers.

### *DOD's Tire Privatization Initiative and Bid Solicitation*

9.    In approximately July 2006, Defendant DLA, acting through the Defense Supply Center Columbus ("DSCC"), issued a bid solicitation (SP0700-06-R-7023) in

connection with DLA's Tire Privatization Initiative ("TPI").  The TPI sought to privatize the role previously played by the Government in the supply, storage and distribution of tires to Defendant DOD.

10.    The solicitation by DSCC sought bids to provide aircraft tires and logistical support services to DOD locations in the Continental United States ("CONUS") and at other locations throughout the world ("OCONUS").  In essence, the solicitation sought a global management solution for delivery of aircraft tires to United States Army and Air Force locations for a base period of five years ("Base Period") with an option to renew for an additional five year period ("Option Period") at the discretion of DOD.

11.    Among other things, DSCC required that a minimum of 35 percent of the industrial base tires supplied pursuant to any contract awarded in response to the solicitation be manufactured by original equipment manufacturers ("OEMs") other than Michelin.  DSCC did not establish any maximum percentage of tires to be supplied by other OEMs.

12.    DSCC also required bidders to submit contract line item number ("CLIN") pricing for:  (a) tire supply, *i.e.* the pre-delivery cost to DOD of each National Stock Number ("NSN") tire to be supplied ("CLIN 1"); (b) the price per tire for CONUS logistical support services ("CLIN 2"); and (c) the price per tire for OCONUS logistical support services ("CLIN 3").

13.    DSCC also required bidders to provide pricing information for CONUS logistical services that included the collection and disposal of tires and also for logistical services that did not include such disposal services.

### *The Michelin Proposal*

14.    In September 2006, Michelin submitted a proposal in response to the DSCC solicitation ("Michelin Proposal").  The Michelin Proposal included highly confidential and proprietary cost and pricing information, including pricing for: (a) the supply of tires on an NSN-specific basis, for its own tires as well as for tires manufactured by other OEMs, including Goodyear and Bridgestone Aircraft Tire (USA), Inc. ("Bridgestone"); (b) logistical services for CONUS and OCONUS locations; and (c) logistical services that included collection and disposal services and for logistical services that did not include those services.

15.    Michelin clearly indicated to DSCC that the cost and pricing information in the Michelin Proposal was confidential and proprietary commercial and financial information that should not be disclosed to third parties.  The Michelin Proposal included a legend stating that it included financial data that was "proprietary information" that "shall not be disclosed outside the Government and shall not be duplicated, used or disclosed - in whole or in part - for any purpose other than to evaluate the proposal or quotation."  The Proposal stated that "data subject to this restriction are contained on all sheets."

16.    Michelin was the only tire manufacturer to submit a bid as the prime contractor. Michelin subcontracted the majority of the logistical support services to Lockheed Martin. Pursuant to the DSCC requirement to provide at least 35 percent of the industrial base tires through other OEMs, Michelin also entered into agreements with Goodyear and Bridgestone to provide tires to Michelin in order to comply with the Contract.  Michelin may enter into agreements with additional OEMs to supply tires to Michelin to meet its obligations under the Contract.

17.    No other tire manufacturer submitted a bid as the prime contractor.    For example, Goodyear participated as a subcontractor in a bid submitted by a logistics company serving as the proposed prime contractor.

18.    Ultimately, DSCC selected the Michelin Proposal and entered into the Contract with Michelin in December 2006.    The Contract as awarded included collection and disposal services associated with tire deliveries to CONUS locations.    Disposal services were not included in the Contract with respect to tires delivered to OCONUS locations.

### *The Goodyear Freedom of Information Act Request*

19.    Shortly after the Contract was awarded to Michelin, Goodyear submitted a Freedom of Information Act ("FOIA") request to DOD seeking release of all documents comprising the Contract.    By letter dated February 1, 2007, DSCC asked Michelin to identify those portions of the Contract documents and the Michelin Proposal that Michelin would object to DSCC releasing in response to the Goodyear FOIA request.

20.    On February 27, 2007, Michelin submitted a letter to the DSCC outlining its objections to the release of certain pricing information contained in the Contract and the Michelin Proposal.    Specifically, Michelin objected to release of Replacement Pages 7 and 8 in the body of the Contract, which contain summary pricing information for tires and support services for the Base Period and the Option Period, respectively.    It also objected to the release of:    (a) Volume I (Price Proposal) of the Michelin Proposal, which contains detailed pricing information, including Appendices that set forth CLIN 1 pricing for each NSN tire and CLIN 2 and CLIN 3 pricing for support services for each NSN tire; (b) Volume II (Technical Proposal), which contains detailed information and Michelin's plan for performing the contract; and (c) Volume III (Subcontracting and Socioeconomic Proposal), which contains

detailed information on Michelin's approach to compliance with various requirements of the Contract.

21.    Thereafter, Defendants apparently released to Goodyear portions of the Contract to which Michelin had not objected.  Goodyear subsequently submitted an appeal to DLA seeking the release of additional portions of the Contract and the Michelin Proposal, including the pricing information now at issue.

### DLA's September 24, 2007 Determinations

22.    By letter dated September 24, 2007, DLA informed Michelin that it had reviewed the administrative file and Goodyear's appeal and had reevaluated what it considered to be exempt from disclosure.  DLA attached to its letter records that had been withheld previously and stated that it had highlighted (or x'd out) in yellow on the attachments the information that "is determined by this agency to be exempt from disclosure and will not be released."  DLA requested Michelin to provide its objections to any of the other information that it had determined to release.

23.    The attachments to the September 24, 2007 DLA letter specifically highlighted the following information, which DLA had determined to be exempt from disclosure and had assured Michelin that it would not release:  (a) on Replacement Page 7 (Summary Pricing for Base Period) DLA highlighted the total unit price per tire and best estimated quantity of the number of tires to be supplied ("BEQ") for all logistical support services, such that DLA would produce only the extended price information; and (b) on Tables A1-1 (NSN Specific Aircraft Tire Price List for Base and Option Periods), A1-2 (NSN Specific CONUS Support Price List for Base and Option Periods, With Disposal), A1-3 (NSN Specific OCONUS Support Price List for Base and Option Periods) and B1-1 (NSN Specific CONUS Support

Price List for Base and Option Periods, Without Disposal) in Volume I of the Michelin Proposal, DLA had highlighted all NSN line item pricing and extended pricing for tires and support services, such that it would release only the total aggregate extended price for the Base and Option Periods and the BEQ information in each table.   In addition, on Replacement Page 8 (Summary Pricing for Option Period), DLA highlighted none of the unit pricing or BEQ information that it had highlighted on Replacement Page 7, indicating that it intended to release all of the information on that page.   Finally, DLA proposed to release certain technical information from Volume II of the Proposal.

24.     By letter dated October 15, 2007, Michelin objected to the release of the pricing and certain other confidential and proprietary information that DLA had not highlighted in its September 24, 2007 letter.   Specifically, Michelin objected to the release of all pricing information on Replacement Pages 7 and 8 and to the release of the extended pricing information in the tables from Appendix A to Volume I because it would allow Michelin's competitors to analyze item number costs and decode per unit pricing costs for tires and logistics services.   Michelin argued that the summary information, together with the CLIN 2 and CLIN 3 extended pricing in the tables from Appendix A would enable a competitor to ascertain the unit pricing for tires and logistics services under the Contract.   It would also impair Michelin's ability to negotiate reductions in agreements with its subcontractors, restricting its ability to pass on savings to DOD under the Contract.

25.     Michelin also argued that DLA's proposed release of information from Volume II of its Proposal would cause significant competitive harm to Michelin.   Specifically, Michelin contended that the release of certain technical information from Volume II would reveal:  (a) the organizational structure of its Proposal, enabling other tire manufacturers to formulate

competing proposals as prime contractors, particularly for the Option Period; and (b) contract and subcontract performance information and evaluations, enabling competitors to identify perceived weaknesses in the Michelin program.

### *The Defendants' February 5, 2008 Decision*

26.    By letter dated February 5, 2008, DLA informed Michelin that it had made its final determination regarding the release of information in the Contract and the Michelin Proposal.   Without prior notice to Michelin, DLA completely reversed course from its September 24, 2007 letter and determined that it would release: (a) all of Replacement Page 7 (Summary Pricing for Base Period) without redacting any of the information that it previously had determined to be exempt in the attachments to its September 24, 2007 letter; (b) Replacement Page 8 (Summary Pricing for Option Period) which contains similar summary pricing information for the Option Period, but with all pricing information redacted; and (c) Appendix A, Tables A1-2 (NSN Specific CONUS Support Price List for Base and Option Periods, With Disposal), A1-3 (NSN Specific OCUNUS Support Price List for Base and Option Periods, With Disposal), and B1-1 (NSN Specific CONUS Support Price List for Base and Option Periods, Without Disposal), all without any redaction at all, despite the fact that it previously had determined that the line item pricing information was exempt and would not be released.   In addition, DLA determined to release Appendix A, Table A1-1 (NSN Specific Aircraft Tire Price List for Base and Option Periods), with unit price per tire for each NSN and the extended prices redacted, except for the total aggregate extended price for the Base Period.

27.    Although Michelin never had an opportunity to object to the release of unredacted versions of Replacement Page 7 and Tables A1-2, A1-3 and B1-1, the February 5,

2008 Letter ("February 5 Decision") stated that it was Defendants' final administrative determination on this issue and that Defendant DLA would release the information to Goodyear on February 20, 2008, absent notice that Michelin had filed suit under the Administrative Procedure Act. The present action seeks to enjoin that release. Michelin understands that it is Defendants' policy and practice, as reflected in 32 C.F.R. §286.23(h)(1), not to release information that is the subject of a court action seeking to enjoin its release until the outcome of the court action is known.

28. Defendants apparently made no effort to analyze the competitive market for the supply of aircraft tires, yet determined that: (a) tire suppliers would be willing to continue to provide to the Government pricing information that it would then share with their competitors; and (b) Michelin would not be competitively harmed by release of the pricing information in its Proposal -- despite the fact that DLA previously had concluded that the summary pricing in Replacement Page 7 and the line item pricing information in the Appendix tables was exempt from disclosure pursuant to FOIA Exemption 4 and would not be released.

29. Instead, DLA simply claimed that it receives only a limited number of protests to the millions of contracts that it posts, so "it may be posited that nearly all of DLA's vendors accept a cost of doing business with the government is that the price the government pays for a good or service is the public's information." On that basis DLA concluded that "[e]mpirical evidence demonstrates disclosure of unit pricing information does not impair DLA's ability to obtain this information from future offerors or bidders."

30. Defendants determined that the pricing information, with the redactions reflected in the materials attached to the February 5 Decision, would "not permit one to mathematically impute the item number costs or per unit price for the individual National Stock

Number (NSN) tires listed under CLIN 1 in Appendix A." DLA made no mention of whether release of that information, in combination with other information made public by Defendants during the course of Contract performance, would enable Michelin's competitors to do so. In any event, Michelin is likely to suffer substantial competitive harm even if its competitors do not ascertain the exact line item price for individual NSN tires.

31.    With respect to the NSN specific CLIN 2 and CLIN 3 pricing reflected in the tables to Appendix A, Defendants determined that the support pricing information that they decided to release covered a "complex basket of services" that included "20 performance areas of responsibility." Consequently, Defendants concluded that "while a competitor may be able to determine the per unit CLIN 2 price, the competitor will be unable to determine Michelin's unit pricing for costs associated with" individual services within the basket. DLA made no determination that release of the NSN specific support pricing information would not cause substantial competitive harm to Michelin when the vast majority of the support services for the Base and Option Period under the Contract are subcontracted to a single supplier. In any event, release of that pricing information will enable other tire providers to Michelin and competitors of Michelin to determine or approximate Michelin's tire pricing, resulting in substantial competitive harm to Michelin.

32.    Defendants also determined that they would release the CONUS pricing information in Michelin's Proposal for support services that did not include collection and disposal services, despite the fact that the Contract as awarded includes collection and disposal services for CONUS locations.

33.    After DLA ultimately identified the specific pricing information that it would produce to Goodyear (which included substantial information that DLA previously had

determined to be exempt and had stated that it would <u>not</u> release), and provided for the first time its rationale for producing that information, Michelin requested the opportunity to demonstrate that: (a) the redactions made by DLA did not suffice to protect Michelin from competitive harm, and would impair Michelin's ability to realize and pass through additional cost savings under the Contract as well as the Government's ability to collect such information in the future; and (b) DLA's rationale for producing the pricing information was erroneous. DLA refused to permit Michelin to make such a submission, stating that its determination was final and that Michelin would have to seek any relief in the courts.

34.      Contrary to DLA's determination, the information that Defendants have determined to release, combined with other information that Defendants make publicly available during the course of performance of the Contract, will enable Michelin's competitors and subcontractors to reverse-engineer specific NSN tire pricing and support pricing (in fact, simple subtraction will provide competitors with Michelin's disposal pricing for CONUS locations). Consequently, the information to be released by DLA, even with the redactions reflected in the attachments to the February 5 Decision, will: (a) impede the government's ability to obtain similar information in the future from Michelin and other aircraft tire manufacturers; (b) impair Michelin's ability to realize and pass through cost savings from its subcontractors; and (c) result in substantial and irreparable competitive harm to Michelin.

### COUNT ONE
### Administrative Procedure Act (FOIA Exemption 4)

35.      Michelin incorporates by reference the allegations in Paragraphs 1 to 34 of this Complaint, as fully set forth herein.

36.    Defendants' February 5 Decision is a final agency action within the meaning of 5 U.S.C. §704 and is reviewable by this Court pursuant to the Administrative Procedure Act.

37.    Michelin has exhausted all available administrative remedies provided by Defendants. Michelin requested the opportunity to respond specifically to: (a) Defendant DLA's identification of the specific items to be released in the February 5 Decision; and (b) the rationale provided by DLA for the release of each item. However, DLA refused to accept any further submission from Michelin.

38.    Michelin will suffer substantial and irreparable harm as a result of Defendants' release of Michelin's confidential and proprietary commercial and financial information (including Replacement Pages 7 and 8 and the pricing information contained in the tables I Appendix A to Volume I) to one of Michelin's major commercial competitors, which also is a supplier of tires to Michelin in connection with the Contract. DLA previously had determined that the summary pricing information on Replacement Page 7 and the line item NSN pricing in Tables A1-2, A1-3 and B1-1 was exempt from disclosure pursuant to FOIA Exemption 4 and would <u>not</u> be released. Defendants' last-minute decision to release that pricing information is a substantial departure from their past determinations.

39.    Although the FOIA authorizes agencies to release certain information in response to a proper request for records, privileged and confidential commercial and financial information and data are exempt from the application of the statute pursuant to Exemption 4 of the FOIA, 5 U.S.C. §552(b)(4). Defendants' decision to release Michelin's confidential and proprietary pricing information to a major competitor of Michelin exceeds the statutory authority of Defendants pursuant to the FOIA.

40.    Defendants' February 5 Decision is arbitrary and capricious, an abuse of discretion and not in accordance with law.  The February 5 Decision is also in excess of statutory jurisdiction, authority, or limitations and short of statutory right.

41.    This Court should vacate or reverse the February 5 Decision and permanently enjoin Defendants from releasing the pricing information contained in Replacement Pages 7 and 8 and the tables in Appendix A.

### COUNT TWO
### *Administrative Procedure Act (Trade Secrets Act)*

42.    Michelin incorporates by reference the allegations in Paragraphs 1 to 41 of this Complaint as if fully set forth herein.

43.    Defendants' February 5 Decision is a final agency action within the meaning of 5 U.S.C. §704 and is reviewable by this Court pursuant to the Administrative Procedure Act. Michelin has exhausted all available administrative remedies provided by Defendants.

44.    Michelin will suffer substantial and irreparable harm as a result of Defendants' release of Michelin's confidential and proprietary commercial and financial information (including Replacement Pages 7 and 8 and the tables contained in Appendix A) to one of Michelin's major commercial competitors, which also is a supplier of tires to Michelin in connection with the Contract.

45.    The information sought in the Goodyear FOIA Request, and which Defendants have determined to release in the February 5 Decision, contains Michelin's trade secrets within the meaning of the Trade Secrets Act, 18 U.S.C. §1905.  Among other things, the Trade Secrets Act provides sanctions for the unauthorized disclosure of trade secrets, confidential data or financial information and prohibits disclosure of cost and pricing information that falls

within Exemption 4 of the FOIA.  DLA already had determined that the majority of the pricing

information that it now decided to release falls within Exemption 4 and would not be released.

46.     Defendants' February 5 Decision would release to a major competitor of

Michelin, on or about February 20, 2008, confidential and proprietary pricing and financial

information that constitutes trade secret information under the Trade Secrets Act, that DLA

previously had determined to be subject to FOIA Exemption 4, and that DLA had assured

Michelin it would not release.

47.     Consequently, Defendants' February 5 Decision is arbitrary and capricious, an

abuse of discretion and not in accordance with law.  The February 5 Decision is also in excess

of statutory jurisdiction, authority, or limitations and short of statutory right.

48.     This Court should vacate or reverse the February 5 Decision and permanently

enjoin Defendants from releasing the pricing information contained in Replacement Pages 7

and 8 and the tables in Appendix A.

### COUNT THREE
### Administrative Procedure Act (Executive Order 12,600)

49.     Michelin incorporates by reference the allegations in Paragraphs 1 to 48 of this

Complaint as if fully set forth herein.

50.     Defendants' February 5 Decision is a final agency action within the meaning of

5 U.S.C. §704 and is reviewable by this Court pursuant to the Administrative Procedure Act.

51.     Executive Order 12,600 requires each Executive Department and agency subject

to the Freedom of Information Act to "notify submitters of records containing confidential

commercial information" whenever a FOIA request has been made and "after reviewing the

request, the responsive records, and any appeal by the requester, the department or agency

determines that it may be required to disclose the records." In addition, when such notice is given, the agency is required "to the extent permitted by law" to afford the submitter "a reasonable period of time in which the submitter or its designee may object to the disclosure of any specified portion of the information and to state all grounds upon which disclosure is opposed."

52.    Since they received the Goodyear FOIA Request in January, 2007, Defendants have provided Michelin with a moving target of proposed releases. Initially, Defendants requested Michelin to identify those portions of the overall Contract documents to which Michelin would object to bring released by Defendants. Michelin identified Replacement Pages 7 and 8 in their entirety as well as Volumes I through III of Michelin's Proposal.

53.    In response to administrative appeals filed by Goodyear and at least one other requester, Defendant DLA on September 24, 2007 determined that certain pricing information from the Contract and the Michelin Proposal was exempt from disclosure and would not be released.

54.    Without any notice to Michelin, the February 5 Decision determined to release specific items of pricing information that Defendants previously had determined to be exempt and had assured Michelin that they would not release. The February 5 Decision also made specific redactions that were substantially different from the redactions previously provided to Michelin. The February 5 Decision also provided for the first time the Defendants' rationale for releasing those specific items of information. Michelin is likely to suffer substantial and irreparable harm if its pricing information is released to a commercial competitor and a supplier of tires to Michelin for the Contract.

55.    After receiving the February 5 Decision, Michelin sought the opportunity to demonstrate to Defendants that release of the specified items of information would:  (a) impede the government's ability to obtain similar pricing information from aircraft tire manufacturers in the future; (b) impair Michelin's ability to realize cost savings under the Contract and to pass those cost savings through to Defendants DOD and DLA; and (c) result in substantial and irreparable competitive harm to Michelin.    Defendants refused to consider any further submission from Michelin.

56.    Contrary to Executive Order 12,600, Defendants refused to afford Michelin a reasonable opportunity to object to the disclosure of the information that previously had been determined by Defendants to be exempt and to demonstrate why the newly-proposed redactions are insufficient to protect Michelin's interests under the Contract and as a competitor of Goodyear.

57.    Defendants' February 5 Decision is arbitrary and capricious, an abuse of discretion and not in accordance with law.  The February 5 Decision is also in excess of statutory jurisdiction, authority, or limitations and short of statutory right.    In addition, Defendants reached the February 5 Decision without observance of procedure required by law.

58.  This Court should vacate or reverse the February 5 Decision and permanently enjoin Defendants from releasing the pricing information contained in Replacement Pages 7 and 8 and the Appendices.

### COUNT FOUR
### *Administrative Procedure Act (DOD Regulations)*

59.    Michelin incorporates by reference the allegations in Paragraphs 1 to 58 of this Complaint as if fully set forth herein.

60.    Defendants' February 5 Decision is a final agency action within the meaning of 5 U.S.C. §704 and is reviewable by this Court pursuant to the Administrative Procedure Act.

61.    The February 5 Decision will result in release of pricing information concerning CONUS support services that do not include collection and disposal services despite the fact that the Contract awarded by Defendants to Michelin includes collection and disposal service at CONUS locations.    The NSN specific pricing information for CONUS services without disposal was not included in the Contract.    That information constitutes confidential and proprietary information belonging to Michelin and the Government has no legitimate interest in that information in light of its decision to include disposal services at CONUS locations in the Contract.

62.    DOD rules provide that information submitted in response to a solicitation for a competitive proposal shall be withheld from public disclosure unless "set forth or incorporated by reference in a contract between a DOD Component and the offeror that submitted the proposal."    The Contract included disposal services at CONUS locations.    Consequently, the pricing information contained in the Michelin Proposal regarding CONUS support services without disposal services was never included in the Contract, and its release by Defendants is prohibited.

63.    In addition to constituting confidential commercial and financial information subject to FOIA Exemption 4, the non-Contract pricing information (*i.e.* CONUS support services pricing without disposal) is protected from disclosure by 10 U.S.C. §2305 and FOIA Exemption 3.    To the extent that the February 5 Decision determined to release pricing information relating to services that were not incorporated into the Contract, the February 5 Decision is arbitrary and capricious, an abuse of discretion and not in accordance with law.

The February 5 Decision is also in excess of statutory jurisdiction, authority, or limitations and short of statutory right.

64.    This Court should vacate or reverse the February 5 Decision and permanently enjoin Defendants from releasing any non-Contract pricing information, particularly the CONUS support pricing without disposal services.

## COUNT FIVE
### (Declaratory Judgment Act)

65.    Michelin incorporates by reference the allegations in Paragraphs 1 to 64 of this Complaint as if fully set forth herein.

66.    This Court has authority pursuant to 28 U.S.C. §§2201-2202 to declare the rights of Michelin with respect to the information at issue and with respect to Defendants' determination to release to Michelin's competitor confidential and proprietary commercial and financial information belonging to Michelin.

67.    Michelin is entitled to a declaration that:

a).    The information at issue is confidential and proprietary information obtained from Michelin and protected from disclosure by FOIA Exemption 4, 5 U.S.C. §522(b)(4), and the Trade Secrets Act, 18 U.S.C. §1905;

b).    There is current and potential competition between Michelin and Goodyear such that disclosure of the confidential Michelin pricing information will cause substantial and irreparable harm to Michelin in current and/or future competition for the sale and delivery of aircraft tires to U.S. and foreign military and commercial purchasers;

c).    The information that Defendants have determined to release includes pricing information concerning CONUS support services that is not included within the Contract between Michelin and Defendants DOD and DLA, and that information is protected from disclosure by DOD regulations and by FOIA Exemptions 3 and 4;

- 19 -

d).    After completely reversing course from their prior determinations that Michelin pricing information was exempt and would not be disclosed, Defendants failed to afford Michelin a reasonable opportunity to oppose release of the specific pricing information identified in the February 5 Decision and to respond to the Defendants' erroneous rationale for releasing that information; and

e).    Defendants' decision to release the pricing information at issue is arbitrary, capricious, an abuse of discretion and contrary to law.

### *Prayer For Relief*

WHEREFORE, Plaintiff Michelin respectfully requests judgment:

A.    Declaring that the pricing information that Defendants have determined to release constitutes confidential and proprietary information within the scope of FOIA Exemption 4;

B.    Declaring that any CONUS support pricing information without disposal services that Defendants have determined to release constitutes information within the scope of FOIA Exemptions 3 and 4 and is protected from disclosure by statute and applicable DOD rules;

C.    Declaring that Defendants failed to afford Michelin a reasonable opportunity to oppose release of the specific pricing information identified in the February 5 Decision and to respond to the Defendants' erroneous rationale for releasing that information;

D.    Setting aside the Defendants' February 5 Decision to release the pricing information at issue to Goodyear as arbitrary and capricious, an abuse of discretion and contrary to law;

E.      Granting Michelin temporary and preliminary injunctive relief from disclosure of the pricing information at issue until the Court reaches a decision on whether to enjoin Defendants permanently from disclosing that information;

F.      Permanently enjoining Defendants from disclosing the pricing information pursuant to FOIA requests by Goodyear or any other requester; and

G.      Granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,


/s/ Timothy J. Fitzgibbon
Timothy J. Fitzgibbon (D.C. BAR NO. 370619)
Robert L. Hoegle (D.C. BAR NO. 940379)
Nelson Mullins Riley & Scarborough LLP
101 Constitution Avenue, N.W.
Suite 900
Washington, D.C. 20001
(202) 712-2800
(202) 712-2860 facsimile

*Attorneys for Plaintiff*
*Michelin North America, Inc.*

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| | |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **(EXCEPT IN U.S. PLAINTIFF CASES)** | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **(IN U.S. PLAINTIFF CASES ONLY)** NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- 3 Federal Question (U.S. Government Not a Party)
- 2 U.S. Government Defendant
- 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| A. *Antitrust* | B. *Personal Injury/ Malpractice* | C. *Administrative Agency Review* | D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| 410 Antitrust | 310 Airplane<br>315 Airplane Product Liability<br>320 Assault, Libel & Slander<br>330 Federal Employers Liability<br>340 Marine<br>345 Marine Product Liability<br>350 Motor Vehicle<br>355 Motor Vehicle Product Liability<br>360 Other Personal Injury<br>362 Medical Malpractice<br>365 Product Liability<br>368 Asbestos Product Liability | 151 Medicare Act<br><br>Social Security:<br>861 HIA ((1395ff)<br>862 Black Lung (923)<br>863 DIWC/DIWW (405(g)<br>864 SSID Title XVI<br>865 RSI (405(g)<br>Other Statutes<br>891 Agricultural Acts<br>892 Economic Stabilization Act<br>893 Environmental Matters<br>894 Energy Allocation Act<br>890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| E. *General Civil (Other)* | OR | F. *Pro Se General Civil* | |
|---|---|---|---|
| **Real Property**<br>210 Land Condemnation<br>220 Foreclosure<br>230 Rent, Lease & Ejectment<br>240 Torts to Land<br>245 Tort Product Liability<br>290 All Other Real Property<br><br>**Personal Property**<br>370 Other Fraud<br>371 Truth in Lending<br>380 Other Personal Property Damage<br>385 Property Damage Product Liability | **Bankruptcy**<br>422 Appeal 28 USC 158<br>423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>535 Death Penalty<br>540 Mandamus & Other<br>550 Civil Rights<br>555 Prison Condition<br><br>**Property Rights**<br>820 Copyrights<br>830 Patent<br>840 Trademark<br><br>**Federal Tax Suits**<br>870 Taxes (US plaintiff or defendant<br>871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>610 Agriculture<br>620 Other Food &Drug<br>625 Drug Related Seizure of Property 21 USC 881<br>630 Liquor Laws<br>640 RR & Truck<br>650 Airline Regs<br>660 Occupational Safety/Health<br>690 Other<br><br>**Other Statutes**<br>400 State Reapportionment<br>430 Banks & Banking<br>450 Commerce/ICC Rates/etc.<br>460 Deportation | 470 Racketeer Influenced & Corrupt Organizations<br>480 Consumer Credit<br>490 Cable/Satellite TV<br>810 Selective Service<br>850 Securities/Commodities/ Exchange<br>875 Customer Challenge 12 USC 3410<br>900 Appeal of fee determination under equal access to Justice<br>950 Constitutionality of State Statutes<br>890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| **G.** *Habeas Corpus/ 2255* | **H.** *Employment Discrimination* | **I.** *FOIA/PRIVACY ACT* | **J.** *Student Loan* |
|---|---|---|---|
| 530 Habeas Corpus-General<br>510 Motion/Vacate Sentence | 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | 895 Freedom of Information Act<br>890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| **K.** *Labor/ERISA (non-employment)* | **L.** *Other Civil Rights (non-employment)* | **M.** *Contract* | **N.** *Three-Judge Court* |
|---|---|---|---|
| 710 Fair Labor Standards Act<br>720 Labor/Mgmt. Relations<br>730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>740 Labor Railway Act<br>790 Other Labor Litigation<br>791 Empl. Ret. Inc. Security Act | 441 Voting (if not Voting Rights<br>Act)<br>443 Housing/Accommodations<br>444 Welfare<br>440 Other Civil Rights<br>445 American w/Disabilities-<br>Employment<br>446 Americans w/Disabilities-<br>Other | 110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment &<br>Enforcement of Judgment<br>153 Recovery of Overpayment of<br>Veteran's Benefits<br>160 Stockholder's Suits<br>190 Other Contracts<br>195 Contract Product Liability<br>196 Franchise | 441 Civil Rights-Voting<br>(if Voting Rights Act) |

## V. ORIGIN

| 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from another district (specify) | 6 Multi district Litigation | 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

---

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint
**JURY DEMAND:**   YES   NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES   NO   If yes, please complete related case form.

**DATE** _____   **SIGNATURE OF ATTORNEY OF RECORD** _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.